UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LETICIA LEON,<br><br>                             Plaintiff,<br><br>v.<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION, WELLS FARGO BANK, N.A., JOHN DOES 1–10,<br><br>                            Defendants. | Civ. No. 15-cv-1193 (KM)<br><br>MEMORANDUM OPINION |

**MCNULTY, U.S.D.J.:**

The plaintiff, Leticia Leon, has brought this action against the Federal Home Loan Mortgage Corporation ("Freddie Mac") and Wells Fargo Bank, N.A. ("WFBANK"), alleging fraud in connection with her home mortgage. In response to a motion to dismiss the original complaint, Ms. Leon stated that she wished to amend and narrow her complaint, and I granted her leave to file an amended complaint (ECF no. 12, cited as "AC"). I granted defendants' motion to dismiss the AC, but granted leave to file a second amended complaint (ECF no. 19, cited as "2AC"). The matter now comes before the Court upon the defendants' motion (ECF no. 20) under Fed. R. Civ. P. 12(b)(6) to dismiss the 2AC for failure to state a claim upon which relief can be granted. For the reasons stated herein, the motion to dismiss is granted, and the 2AC is dismissed with prejudice.

I. **BACKGROUND**

I here summarize briefly the allegations of the 2AC, which are accepted as true for purposes of this motion to dismiss only.

1

On March 23, 2009, Leon entered into a note, secured by a mortgage on her home, with WFBANK as lender.[1] The complaint alleges factually that Leon could not afford the mortgage, and that WFBANK should have known that, but those allegations do not seem to be directly pertinent to her fraud claim. It also contains general allegations about the housing bubble and predatory loan practices in the U.S. (2AC ¶¶ 20–41)

On or about May 29, 2009, the loan was bundled and sold to investors as part of a derivative Mortgage Backed Security entitled the Freddie Mac Multiclass Certificates, Series 3530. (2AC ¶ 42) The 2AC states that it will not "delve ... into" any violations of a Pooling and Servicing Agreement ("PSA"), or further describe the participants in the transaction. (2AC ¶43) Allegedly, however, the promissory note was either not deposited into the securitized trust, or was only deposited in the form of a paper or digitized copy. (2AC ¶ 45–47) The 2AC alleges that such trusts were run in a fraudulent manner, were IRS "ticking time bombs," and that their flaws were covered up by the Obama Administration. Some mortgagees have falsified assignments, or engaged in "robo-signing." Use of the MERS system has promoted "illicit trafficking" in mortgages which are not contemporaneously recorded. (2AC ¶¶ 48–56)

Ms. Leon's single cause of action for fraud alleges that Freddie Mac's "failure to record a tangible assignment for more than 7 years conveying the interest in Plaintiff's Subject Property, from WFBANK to FREDDIMAC, and failing to notify Plaintiff in writing, was, and is, a material misrepresentation." (2AC ¶ 59) It also violated the "express terms of the Mortgage." (2AC ¶ 60) "Plaintiff was damage[d] by such misrepresentation insomuch as she has been under the assumption that WFBANK was in fact the holder in due course of the Note and Mortgage, and has been making improper payments to WFBANK

---

[1] Defendants state that this was a refinancing, that the loan amount was $322,000, and that the loan has been in default since March 1, 2014. They attach copies of, *inter alia*, the note and mortgage. (ECF nos. 20-5, 20-6, 20-7) Because these documents are cited in and integral to the complaint, I may consider them on a Rule 12(b)(6) motion. *See In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

2

under that presumption." (2AC ¶ 65) Relatedly, the Complaint alleges that "[b]y concealing the securitization of the Note and transferring of the Mortgage to FREDDIEMAC, Defendant WFBANK concealed the fact that the Loan changed in character inasmuch as no single party would hold the Note but rather the Notes would be included in a pool with other notes, split into tranches, and multiple investors would effectively buy shares of the income stream from the loans." (2AC ¶ 71)

The 2AC, like the AC, contains a single cause of action entitled "Common Law Fraud." (Heading preceding 2AC ¶ 57) That cause of action does cite the elements of the common law tort of fraud, but it also extensively cites the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1 *et seq.* (AC ¶¶ 41-43, 53–54) I will analyze it as both a fraud claim and an NJCFA claim. The 2AC seeks damages.

## II.   APPLICABLE STANDARD

Defendants have moved to dismiss the complaint. Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by later Supreme Court *Twombly* case, *infra*).

Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual

allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).

For claims of fraud, including claims under the New Jersey Consumer Fraud Act, Rule 9(b) imposes a heightened pleading standard, over and above that of Rule 8(a). *Crozier v. Johnson & Johnson Consumer Companies, Inc.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012) (NJCFA claim subject to Rule 9(b) pleading standards); *see also F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994). Specifically, Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). That heightened standard requires the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotation and citation omitted). "Malice, intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally." Fed. R. Civ. P. 9(b).

In general, Rule 9(b) requires that a complaint allege the "who, what, when, where and how of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006). The standard of sufficiency, however, must be applied with sensitivity to the context:

> [Plaintiffs] need not, however, plead the "date, place or time" of the fraud, so long as they use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." The purpose of Rule 9(b) is to provide notice of the "precise misconduct" with which defendants are charged and

4

> to prevent false or unsubstantiated charges. Courts should, however, apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants.

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (quoting *Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984) and citing *Christidis v. First Pennsylvania Mortg. Trust*, 717 F.2d 96, 99 (3d Cir. 1983)). *See also Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir.1989) ("even under a non-restrictive application of the rule [9(b)], pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of facts upon which the allegations are based.") (quoted in *F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994)).

The plaintiff here appears *pro se*. "Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n. 6 (3d Cir. 1997)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### III. DISCUSSION

Defendants move to dismiss the complaint for failure to state a claim of common law fraud or consumer fraud under the NJCFA.

The elements of common law fraud are (1) a material misrepresentation of present or past fact (2) with knowledge of its falsity (3) with the intention that the other party rely thereon (4) and which resulted in reasonable reliance by plaintiff. *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 432 A.2d 521, 524 (1981).

The NJCFA provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. 56:8-2.

Like its predecessors, the 2AC claims that the defendants assigned the loan for purposes of securitization without informing the plaintiff. This is alleged to have had a "negative effect" on the plaintiff, and to have caused her to make "improper payments" to WFBANK.[2] The defendants insist that the loan was *not* in fact assigned or securitized. WFBANK, they say, originated the loan and is still the holder of the note and mortgage. They may or may not be right; that is a factual issue that cannot be determined on a motion to dismiss.

But even crediting the allegations of assignment or securitization, as I must, they are simply too vague an assertion to make out a claim of fraud or consumer fraud under the standards of Rule 9(b). Now it may be possible, of course, to commit a fraud in the context of assignment or securitization. Consider, for example, a party which has not validly been assigned a loan, but nevertheless demands payment under that loan. Or conversely, consider a party which knowingly assigned away its rights but nevertheless continues to collect payment as if it were the mortgage holder. But nothing like that appears in the facts alleged here.

The 2AC fails to allege factually that Ms. Leon was misled to her detriment. It merely alleges, in conclusory fashion, that Ms. Leon was inveigled into making "improper" payments to WFBANK. She does not allege that her payments were not properly credited against her mortgage balance. She does

---

[2] The 2AC generally criticizes securitizations as being fraudulently run, but refrains from making any claim of breach of a PSA.

6

not claim that she has been subjected to conflicting demands. (Any such claim could be asserted, of course, as a defense to foreclosure.)

The 2AC, like its predecessor, consists of little more than a bare claim that a mortgagee, by permitting a mortgage loan to be used in connection with a securitization transaction, has committed fraud. But assignment of a mortgage (assuming it occurred), or pledging it as part of a securitization, is not in itself tortious.[3] Whether Freddie Mac as trustee, or investors in a trust, eventually received any part of the payments Ms. Leon made to WFBANK would not naturally have affected her rights or obligations in the least. Indeed, a mortgagor who has received the loan proceeds to buy her home may ordinarily be indifferent to any subsequent assignment, provided that her payments are properly credited and her repayment obligations remain unaltered. The 2AC does not *factually* allege any negative effect on Ms. Leon.

In my prior Opinion I stated the following: "To make out a fraud claim, more specificity is required as to the who, what, when, where, and how: the essentials of precisely how the plaintiff was misled, and how she claims to have been harmed as a result of the alleged assignment/securitization. If this can be done, then a second amended version of the claim may survive a motion to dismiss." (ECF no. 17 at 7) The 2AC fails to meet that standard.

---

[3] Such reasoning is also consistent with analogous case law cited by defendants holding that mortgagors lack standing to sue based on matters arising between parties downstream in the assignment chain. *Cf.* Def. Br. 13, citing *Correia v. Bank Nat'l Trust Co.* (In re Correia), 452 B.R. 319, 324 (1st Cir. BAP 2011); *Juarez v. [J.S. Bank Nat'l Ass'n*, 2011 WL 5330465, at *4 (D. Mass. Nov. 4, 2011) (plaintiff "does not have a legally protected interest in the assignment of the mortgage to bring an action arising under the PSA"); *Greene v. Loan Serv.. Inc.*, 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010) ("Plaintiffs are not a party to the [PSA] and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement."); *Anderson v. Countrywide Home Loans*, 2011 WL 1627945, at*4-5 (D. Minn. April 08, 2011) ("Plaintiffs do not have standing to challenge the validity of the assignment to the Trust because they are not parties to the PSA.")

7

## CONCLUSION

For the foregoing reasons, the motion to dismiss the 2AC is granted. Because the plaintiff has now had three chances to state a viable claim, this dismissal is with prejudice. A separate order accompanies this Opinion.

Dated:   Newark, New Jersey
         July 20, 2017

Kevin McNulty
**United States District Judge**